## The Bank of Monroe *vs.* Widner and others.

Where a foreclosure suit was commenced before a vice chancellor, who had formerly been counsel for one of the parties, in the same matter, and the parties subsequently entered into a written agreement, to refer the cause to a solicitor of the court, to hear and decide the same, and that a decree should be entered by the vice chancellor in conformity to that decision; reserving to the parties the right of appeal; and the cause was heard by such referee, who decided the matter in controversy between the parties, and directed the usual decree to be entered, referring it to a master to compute the amount due upon the mortgage, and reserving the further directions until the coming in of the report, and such interlocutory decree was drawn up and entered accordingly;

*Held,* that the decree was binding upon the parties, and ought not to be set aside by the court; and that the defendant had not the right to revoke the power of the referee; so as to prevent him from making the usual decree of foreclosure and sale upon the coming in and confirmation of the master's report.

The time allowed for appealing, from an order or decree of a vice chancellor, being fixed by statute, the court cannot extend the time for appealing, indirectly; by vacating the decree or order, and entering it as of a more recent date; for the mere purpose of giving a party a right to appeal after the time limited by law has expired.

An agreement to refer a pending suit to an arbitrator, and that a judgment in the cause shall be entered according to his decision, will justify the entry of such judgment; which judgment will be binding upon the parties, as a judgment entered by consent.

After a cause has been argued, and finally submitted to the arbitrator for his decision, neither party has the right to revoke the powers of the arbitrator.

THE bill in this cause was filed before the vice chancellor of the eighth circuit, in 1838, to foreclose a mortgage. At the time of filing the bill the present vice chancellor of that circuit was the copartner of the complainant's solicitor, and was coun-

sel in the suit; and the bill was regularly taken as confessed against all the defendants therein. In 1839, after the appointment of the present vice chancellor of the eighth circuit, J. Widner and P. Widner, two of the defendants, applied to the complainants' solicitor to be let in to defend the suit. But as the then vice chancellor of that circuit was considered incompetent to hear and decide the matters in controversy in the cause, by reason of his having once been counsel therein, it was agreed by a written stipulation, signed by the complainants' solicitor, and by the solicitor for the defendants, J. Widner and P. Widner, that the default of those defendants should be opened, and that they should be permitted to put in an answer to the bill, and that when the cause should be ready for hearing, upon pleadings and proofs, it should be referred to and decided upon, by O. Hastings, Esq., and that the decision and decree made by him might be signed by the vice chancellor of the eighth circuit, and entered by the clerk in this cause, with the like force and effect as if heard and passed upon by the vice chancellor, in the ordinary way, without objection; reserving to the parties the same right of appeal as upon an ordinary decree of the vice chancellor. An answer was accordingly put in by those defendants, to which a replication was filed, and the proofs were taken in the usual manner. When the cause was in readiness for hearing, upon pleadings and proofs, it was argued by the counsel for the respective parties before O. Hastings, Esquire, who subsequently decided the principal matter in controversy in the suit, and directed a reference to a master, to compute the amount, due to the complainants, upon the bond and mortgage. In pursuance of the stipulation, a decree was thereupon drawn up and signed by the vice chancellor, and entered by the clerk in the minutes of the court, in conformity to the decision of Mr. Hastings; by which it was ordered, adjudged and decreed that the bond and mortgage mentioned in the complainants' bill, were good and valid securities in their hands, as against P. Widner and the other defendants in this suit, for the amount of the indebtedness of H. Widner deceased, to the complainants; and directing a reference to a master to compute the amount due, and to take proof of the

facts and circumstances stated in the bill, as to the rights of absentees, and to examine the cashier of the complainants as to payments, &c., and giving special directions as to two items of indebtedness claimed by the complainants as due to them, and secured by the bond and mortgage, reserving further directions, until the coming in of the master's report. After the entry of this decree, the defendant J. Widner attempted to appeal therefrom to the chancellor; but by accident the appeal bond was not received in time to file it, and to perfect the appeal within the period allowed by law for appealing. The solicitor for the defendants was duly summoned to appear before the master upon the reference, but he did not attend. And the master thereupon computed the amount due, in conformity to the order of reference, and made his report, dated the 23d of February, 1844. The cause was thereupon noticed for hearing, before the vice chancellor, for a final decree upon the report. The counsel for the defendant, J. Widner, having consulted with his clients, thereupon gave notice, to the solicitor for the complainants, that he should object to the vice chancellor's hearing the case, for the purpose of making the final decree, on the ground that he had been counsel in the cause; and that he should treat the powers of Mr. Hastings as at an end, and that he thereby revoked all power and authority of Mr. Hastings, if any existed under the stipulation. The defendants' solicitor also filed, in the clerk's office, certain exceptions to the master's report. The complainants subsequently noticed the case for hearing before Mr. Hastings, pursuant to what he supposed to be their right under the stipulation, and a final decree was thereupon directed, by Mr. Hastings, and was signed by the vice chancellor and entered by the clerk, in the usual form, for a foreclosure and sale of the premises, to satisfy the amount reported due by the master.

The solicitor for the defendants, J. Widner and P. Widner, thereupon gave notice of an application, before the chancellor, that the original decree entered by the vice chancellor, in pursuance of the first decision of Mr. Hastings, and all subsequent proceedings on the part of the complainants, including the final decree upon the master's report, should be set aside, with costs

for irregularity ; and in case that application should not be granted, then that such original decree and all subsequent proceedings should be opened, and that such decree might be re-entered, so as to give the defendants a right to appeal therefrom, or for such further or other order as might be proper in the premises.

*M. T. Reynolds*, for the complainants.

*H. Gay*, for the defendants, J. and P. Widner.

THE CHANCELLOR. The time for appealing, from an order or decree of the vice chancellor, being limited by statute, the court has no power to extend the time for appealing, indirectly ; by vacating the decree or order and entering it as of a more recent date, for the mere purpose of giving a party the right to appeal. That was so held by this court in the case of *Caldwell* v. *The Mayor of Albany*, (9 *Paige's Rep.* 572,) which must be considered as decisive upon that part of the present application. It is, therefore, unnecessary to examine the question whether the court is authorized to interfere in any way with a decree by consent, so as to give to the defendants the right of appeal, in a case not provided for in their stipulation ; even if the chancellor would have had jurisdiction to hear and decide the appeal, if it had been duly entered.

The parties having stipulated that a decree might be entered in the cause, in conformity with the decision of Mr. Hastings, this court ought not to interfere to set aside that decree, if the terms of the agreement have been in fact complied with on the part of the complainants, unless there is some unbending legal principle which renders such an interference on the part of this court necessary and proper. The effect of the agreement was, in substance, to waive the default of these two defendants, and to permit them to put in an answer and make a defence to the suit, and that the questions arising in the cause should then be submitted to Mr. Hastings to decide, in the same manner as the vice chancellor would have been authorized to decide them,

if he had not been previously concerned as counsel in the case; and that the decision so made, by the arbitrator agreed on by the parties, should be carried into effect, by the entry of a formal decree in the suit, in conformity with such decision. The fair construction of the stipulation between the parties therefore was, that the arbitrator was to proceed in the same manner as the vice chancellor might have done, if he had heard the cause in person. The decision of the questions of law and fact, arising upon the pleadings and proofs, and the entry of the usual decree declaring the rights of the parties, and referring it to a master to compute the amount due, and to make the usual inquiries as to the rights of absentees, and to examine the proper officer of the corporation on oath as to payments, preparatory to a final decree, was therefore in conformity to the provisions of the agreement, and was fully authorized thereby. And it is impossible for the court to set aside that decretal order, or the report of the master made in pursuance of the same, without making a new agreement for the parties, without their consent.

Our courts have decided, that a mere agreement to refer the matters in controversy in a suit, to an arbitrator to hear and decide the same, is a discontinuance of the suit. And that the only remedy of the parties in such case is upon the agreement to refer, or by a suit upon the award, if an award is in fact made in conformity to the stipulation. But it has also been held, and that too by the court of dernier resort in this state, that an agreement to refer a suit pending, to an arbitrator, and that a judgment shall be entered in the cause in conformity with his decision, will justify the entry of a judgment accordingly; which judgment will be binding upon the parties, as a judgment by consent. (*Yates* v. *Russell,* 17 *John. Rep.* 461. *Green* v. *Patchen,* 13 *Wend. Rep.* 293.) In the case under consideration, the defendants might probably have revoked their consent to submit the cause to the decision of Mr. Hastings, at any time before it had been heard by him, and left for his decision, pursuant to the stipulation. But they certainly could not have done so without waiving all the benefits of the stipulation, as to opening their default and permitting them to put in an answer

and make a defence.  For no court of justice would have permitted them to commit such a fraud upon the adverse party, who had waived their default upon the faith of this agreement. And after the cause had been heard before the referee, and submitted to him for his decision, it was too late for either party to revoke the submission.  It is true, at the common law, it was competent for one of the parties to a submission to arbitration, to revoke the submission at any time before the award was actually made, and ready to be delivered to the parties.  But the revised statutes have wisely provided that neither party, to a submission to arbitration, shall have power to revoke such submission after the cause has been finally submitted to the arbitrator, upon a hearing of the parties, for his decision.  (2 *R. S.* 544, § 23.)  And this court has decided that the statutory provision on this subject, applies to all cases of submission to arbitration.  (*Bloomer* v. *Sherman,* 5 *Paige's Rep.* 575.)  The case under consideration was finally submitted to Mr. Hastings, for his decision, at the close of the last argument before him, upon the pleadings and proofs.  It was therefore too late to attempt to revoke his powers under the stipulation, after he had decided all the questions, in dispute between the parties, in favor of the complainants, and after a decree had been entered in conformity with that decision.  It is true, this decree was not the final determination of the suit; but it was a decision upon the merits of the case, which in its nature could not again be reviewed or altered by the arbitrator.  And as, from the nature of the case, the submission contemplated a decision of the arbitrator in this form, according to the course and practice of the court of chancery in similar cases, the award was final and valid pro tanto, although the referee was thereafter to carry his previous decision into effect, by directing the usual decree to be entered, upon the coming in of the master's report.  That, however, was a mere matter of form, as the defendants were not authorized to except to the report of the master; not having attended before him to bring in objections, upon which exceptions could be founded.  The subsequent attempt, therefore, to revoke the power of the referee to carry out his decision by the entry of

the usual decree for a sale of the mortgaged premises, upon the coming in of the report, was nugatory. For the power of the arbitrator could not be revoked, in part, after the entry of this interlocutory decree; so as to prevent him from making a final decision of the matter, by directing the entry of the usual decree of sale, upon the coming in of the master's report, which decree was merely consequential upon the previous decision.

The entry of the final decree was therefore regular, as well as the previous decree and the proceedings before the master; as to which previous decree and the master's report, there certainly is no foundation for a pretence of irregularity, so far as the rights of J. Widner and P. Widner are concerned. Even if the final decree should now be set aside, upon the ground that the powers of Mr. Hastings were spent when his first decision was made, which settled the whole merits of the controversy, it would be a matter of course to direct the entry of the final decree, upon the master's report, upon the usual application to the chancellor; in case the vice chancellor is incompetent to direct the entry of a mere formal decree, on the ground that he had once been counsel in the cause. From the view I have taken of the case, however, even that formality is unnecessary; and this application must be denied.