## MERRITT *v.* THOMPSON, Administratrix, &c.

Pending an action, the parties stipulated to submit to a referee such items of their mutual accounts as they should not agree upon: the referee not to be bound by legal rules of evidence, but satisfy himself as to the justice of the claims, his decision thereupon to be final and not appealable: any sums allowed by him to be added to or deducted from the balance upon the items agreed upon by the parties: judgment to be entered for the balance ascertained. Until such judgment the stipulalation was not to interfere with the proceedings in the suit, and if judgment should be obtained in the suit while the proceedings under the stipulation were pending, the stipulation should be of no effect. The stipulation by its terms was not to be an arbitration, and no admission made by either party in the proceedings was to be admissible in evidence "if this effort to compromise shall fail." *Held,* that this was a conditional submission to arbitration, and that after an award, no other proceedings having been had in the suit, the power of the arbitrator could not be revoked so as to prevent judgment.

The award is equivalent to a special verdict upon distinct issues in relation to the claims submitted, and the court may render judgment upon all the facts, as well those reported by the arbitrator as others established by the admissions in the pleadings.

The statute prohibiting the recovery of costs in actions at law against executors and administrators, where payment has not been unreasonably refused or neglected, does not apply to suits commenced against the testator or intestate in his lifetime.

ACTION commenced in July, 1854, in the Court of Common Pleas of the city of New York, against Martin Thompson, to recover $30,000, alleged to have been received by the defendant at Hong Kong, in China, on the sale of the ship "Mischief," on the plaintiff's account. Also, a further sum for the earnings of the ship prior to the sale.

The defendant, in his answer, alleged that before the sale at Hong Kong, viz., in December, 1853, he sold the ship in San Francisco, as he was authorized to do by a power of attorney from the plaintiff, for $22,000, and that he was ready to account for the proceeds of such sale. He annexed to his answer an account, claiming sundry credits for payments and expenses, and showing a balance in favor of the plaintiff of $2,675.34,

after deducting all credits claimed by him, which he offered to pay, if the plaintiff would assent to the account as stated by him.

Among the credits claimed by the defendant was a note of the plaintiff for $2,000, dated May 17, 1853, at six months, with interest, which was set up in the answer as a counterclaim. This counterclaim stood admitted on the record, the answer not having been replied to.

Martin Thompson having died, the present defendant, administratrix of his estate, was, in June, 1859, by an order of the Court of Common Pleas, substituted as defendant in his stead.

The action was not brought to trial in the court, but on the 17th of November, 1859, the parties, under the title of the cause, entered into the following stipulation:

" Whereas, the parties in the above entitled suit are desirous that the claims involved in the same be compromised and settled, it is hereby stipulated between the parties hereto, that, for the purpose of a compromise and settlement of said claim, and for no other purpose, the defendant will pay to the plaintiff his share of the amount for which the ship ' Mischief ' was sold at Hong Kong; * * * and any passage money or other receipts of the ship, deducting therefrom the expenses which said Thompson may have incurred as master of said ship, together with his salary, as settled between the said Thompson and the plaintiff herein, and any other charges which said Thompson was rightfully entitled to make.

" And it is further stipulated, that if the parties do not agree on all the items of said accounts, or on all the amounts claimed by the defendant, such *disputed items or questions*, with the accounts and vouchers relating thereto, and the objections made by said Merritt to the same, shall be submitted to Eben B. Crocker, Esq., for his decision thereon: that either party may be heard and produce proofs before said Crocker: that, in settling said accounts and disputed items, the said Crocker shall not be bound by strict legal rules of evidence, but shall satisfy himself as to the justice of the claims, and decide thereupon.

"And it is hereby further stipulated, that the decision of said referee shall be taken by both parties as final, and no appeal can be taken therefrom; and if, on such decision of such disputed accounts, any one shall be found to be due to either of the parties, that the same *shall be added to or subtracted from* the amount which may have been previously agreed upon between the parties, according as the same shall be in favor of or against the party in whose favor the balance of admitted items shall be; and that judgment *for the balance ascertained shall be entered*, and shall be enforced in all respects the same as if it were a judgment of this court.

"And it is hereby stipulated, that the party in whose favor such balance shall be found, shall have full power to enter judgment for the same, and that, on the perfection of said judgment, it shall be a bar to all further proceedings in the above entitled suit.

"And it is hereby further stipulated, that until such judgment is perfected, this stipulation shall not in any way interfere with the proceedings in the above entitled suit, and that if judgment is obtained in the suit at law during the pendency of the proceedings under this stipulation, then and from thenceforth this stipulation shall be null and of no effect.

"And this stipulation shall not be deemed an arbitration, or a discontinuance of this action, but only an effort made, in good faith on both sides, to settle the same, binding in honor upon both, but not to prejudice the legal rights or remedies of either party, in case a settlement cannot be effected by this means. No admission, made on the part of either party during this negotiation, shall be admissible in evidence, if this effort to compromise shall fail. Dated New York, November 17, 1859."

Proceeding under that stipulation, the accounts, bills and vouchers of Martin Thompson were submitted to the plaintiff by the defendant, and were examined by the plaintiff, and the items agreed upon as far as practicable; but the parties failed to agree upon all the items, and the disputed items or questions, with the accounts and vouchers relating thereto, the

objections made to them by the plaintiff, and the reasons given for their allowance, were submitted by the parties to the referee named therein, for his decision. The whole accounts were presented to the referee, and the items which were admitted, and those which were disputed, were pointed out to him by the parties. Both parties appeared before the referee, and produced proof in regard to the disputed items. The $2,000 note was .presented by Mr. Curtis to the referee, as a charge against the plaintiff, who admitted the validity of the note, but insisted that it was not within the stipulation and could not be allowed.

On the 23d of May, 1860, the referee made the following report:

"I, Eben B. Crocker, the referee in the above entitled action, do find and hereby declare, that there was due to William H. Merritt, the plaintiff in this cause, $19,963.68, on the 29th day of June, 1854, after deducting all sums received by the said Merritt up to that date; and hereby declare, that there is due to William H. Merritt, from the estate of Martin Thompson, this 23d day of May, 1860, $12,535.60. This sum is due to said Merritt from the proceeds of the sale of ship 'Mischief,' from the time of her sale at auction at San Francisco, December 10th, 1853, and after deducting all sums he has received from Martin Thompson, or from his estate, on account of the sale of said ship.

"This decision does not in any way invalidate the note of William H. Merritt, dated May 17th, 1853, in favor of Martin Thompson, for $2,000; and all I have decided is, what was due to William H. Merritt from the sale of the ship 'Mischief,' less all sums he has received from Martin Thompson, and from his estate, on that account.          EBEN B. CROCKER."

On the 30th of May, 1860, the defendant's attorney notified the plaintiff's attorney that the defendant declined to abide by the decision of Mr. Crocker, and elected to proceed with the suit.

In May, 1861, a motion was made on the part of the plaintiff, at a special term of the Court of Common Pleas, founded

on the report, and on affidavits showing the facts, for judgment in accordance with the report. The motion was opposed by the defendant. It appeared by the affidavits that the referee allowed all the items agreed upon by the parties, and to those added the disputed items as allowed by him, and the balance of such accounts, rejecting the $2,000 note, was the amount specified in his report; that he rejected the $2,000 note, because he did not consider it embraced in the stipulation.

The motion was granted, and judgment was entered in favor of the plaintiff, for the amount reported as due to him, with interest from the date of the report, and the costs of the action, after deducting from the report, with the plaintiff's consent, the amount of the $2,000 note and interest.

The defendant appealed from that judgment to the court at general term, where the judgment of the special term was reversed, and judgment entered in favor of the defendant for the costs of the action. The plaintiff appealed to this court.

*William M. Evarts,* for the appellant.

*Gilbert Dean,* for the respondent.

SELDEN, J. It was conceded on the argument by the respondent's counsel, that it was erroneous to enter final judgment against the plaintiff on the appeal in the court below, and that for that error the judgment must now be reversed; but it was insisted that on such reversal, the judgment of the special term should not be affirmed, but that a new trial should be granted, in accordance with the presumed intention of the court below. The only question, therefore, for consideration here is, whether there was any error in the judgment entered at the special term.

In order to decide this question, it is necessary, in the first place, to determine the character of the agreement entered into by the parties, which forms the basis of the judgment. The defendant's counsel insists that it constituted neither a reference nor an arbitration, but only an attempt to compromise the matters in dispute. It clearly did not constitute a reference within

the statute authorizing references.   It was not ordered by the court; it did not refer the whole case, or any specific question of fact involved in it.   The questions to be decided were to be determined by the subsequent action of the parties.   The referee was not to be governed by the legal rules of evidence; was to find facts only, and not conclusions of law; and his decision was to be final and conclusive.   In all these respects the proceeding differed from a reference. (Code, §§ 271, 272.) The defendant's counsel said correctly, that it was an attempt at a compromise; but it was much more than that; it was an *attempt to compromise in a particular manner, with an appoint-ment of an arbitrator* (or referee, as he is called in the stipu-lation), with power to decide, finally and conclusively, all the questions in regard to which the parties should fail to agree; and with the further authority to the prevailing party, to enter judgment for the amount which should be found due to such party, as the balance of the items agreed upon by the parties, and allowed by the arbitrator.   This agreement was a condi-tional submission to arbitration.   The declaration of the parties that it should not be deemed such, did not change its character. It gave to Mr. Crocker, when he came to act under it, the powers of an arbitrator.   This was so held by the general term of the Common Pleas; and it appears from the opinion of that court that the judgment of the special term was reversed solely on the ground that the award of the arbitrator was void for want of finality, " as it did not take into account the note of the plaintiff, which constituted a counterclaim, undisputed in the action."   The same ground is relied upon by the respondent's counsel to sustain the reversal.

Under the submission in this case, it would doubtless be fatal to the award if any portion of the matters in dispute submitted to the arbitrator should be found not to have been decided by him (4 Duer, 138;  5 Cow., 197); although the question, whether an award upon a part of the matters sub-mitted is valid, does not depend upon any absolute rule of law, requiring the determination of all the matters submitted, to give validity to an award, but upon the terms of the agree-

ment of submission. (3 M. & W., 206.) The arbitrator in the present case has complied with the requirements of the submission in this respect. The "disputed items or questions" only were submitted to him "for his decision," and the note was not among them. That was conclusively admitted by the record; and it was also admitted by the plaintiff, before the arbitrator, to be a valid claim against him, the parties differing only upon the question whether it was within the terms of the submission. It was not denied that the arbitrator passed upon all the disputed items or questions. Nothing, therefore, can properly be alleged against the report, upon the ground of omission.

It is further insisted, in behalf of the defendant, that the arbitrator exceeded the powers conferred upon him by the stipulation, in determining the amount for which the ship was sold at Hong Kong; and also in making or stating an account; and that the general report made by him was therefore void. I think it is obvious, from the terms of the stipulation, that the "compromise and settlement" were designed to embrace all the matters in dispute between the parties, and that the submission was to embrace the same matters, so far as they should not be agreed upon. The price of the ship was one of the items of the account submitted by the defendant to the plaintiff under the stipulation, and in regard to which they failed to agree, the plaintiff claiming a larger sum than the defendant would allow. Both parties produced proof before the arbitrator in reference to this item, and the affidavits show that it constituted "the principal subject of investigation" before him. Until it was disposed of, the plain object of the stipulation could not be secured. It does not appear to have been suggested to the arbitrator that that was not one of the "disputed items" submitted for his decision, and he was clearly right in embracing it in his award.

It is not distinctly declared in the stipulation who was to "add to or subtract from the amount previously agreed upon" the sum which should be found due to either party upon the disputed items, but it is fairly to be inferred that it was to be

done by the arbitrator. The parties appear to have acted upon this assumption, in submitting all the items to him, as well those agreed upon by them as those which were disputed, and the expression, "settling said accounts *and* disputed items," shows that this course was contemplated when the stipulation was made. The arbitrator was justified, therefore, in reporting the balance of the whole account thus submitted. Even if this union of the two classes of items was not authorized by the stipulation, as it was a merely clerical act, which could not have injured either party, it would not have invalidated the award. (2 Peters Cond. U. S. R., 463; 1 Seld., 489.)

The failure to include the $2,000 note in the award, as has been shown, was not the fault of the arbitrator; and, although a literal reading of the submission, by itself, would have entitled the plaintiff to a judgment for the sum awarded, rejecting the set-off of the note, such a course would have been, not only contrary to the intention of the parties, but, as the record stood when the report came before the court, manifestly illegal. The submission and award should be read and interpreted in connection with the pleadings in the cause. Thus read and understood, they are equivalent to a special verdict upon a distinct issue of fact made by the pleadings in a cause, upon which, together with other facts admitted by the pleadings, the court pronounces judgment. (*Barto* v. *Himrod*, 1 Seld., 485; *Molineux's Case*, Jenk., 102; Bac. Abr., Verdict, W.; *Lee* v. *Lingard*, 1 East, 403.) By the pleadings, the $2,000 note stood conclusively admitted, as due to the defendant. The submission did not touch that item, but only those in regard to which the parties were at issue. On the coming in of the award, showing a larger sum due to the plaintiff on the disputed items, the duty devolved on the court of rendering the appropriate judgment on all the facts, those admitted and those reported. This was done, and precedents are not wanting to show that the court was authorized to render such judgment. (*Yates* v. *Russell*, 17 Johns., 461; *Ex parte Wright*, 6 Cow., 399; *Farrington* v. *Hamblin*, 12 Wend., 212; *Green* v. *Patchin*, 13 id., 293; *Bank of Monroe* v. *Widner*, 11 Paige,

Merritt v. Thompson.

529; *Prentice* v. *Reed*, 1 Taunt., 152; *Salter* v. *Yates*, 2 M. & W., 67; *Platt* v. *Hull*, id., 391; *Miller* v. *De Burgh*, 4 W. H. & G., 809; *Gray* v. *Gwennap*, 1 B. & Ald., 107.)

The record shows that the defendant, in opposing the motion for judgment, claimed, and that the plaintiff consented to, the deduction of the amount of the note from the amount awarded as due to the plaintiff; and doubtless both parties would be precluded from alleging, on appeal, that such deduction was erroneous. I am satisfied, however, that, without reference to the consent of the parties, the court was bound to render such judgment, and that any other would have been erroneous.

It is further insisted, on the part of the defendant, that either party was at liberty to revoke the submission at any time before the entry of judgment, and that the revocation after award was in season to prevent the judgment. This position is based upon that clause of the stipulation which declares, that "until judgment is perfected, this stipulation shall not in any way interfere with the proceedings in the suit," &c. It is not necessary to decide what might have been the effect of this clause, if either party had elected to proceed under it before the matters in dispute were finally submitted to the arbitrator; but it is very certain that it did not authorize a revocation of the power of the arbitrator after the final submission of those matters to him for decision. (2 R. S., 544, § 23; 11 Paige, 534; *Ex parte Wright*, 6 Cow., 399.)

No objection has been made to the merits of the award, and indeed none could be made which did not involve corruption or misconduct on the part of the arbitrator, or an award not within the submission. (*Kleine* v. *Catara*, 2 Gallis., 61–71; *Smith* v. *Cutler*, 10 Wend., 589; *Emmet* v. *Hoyt*, 17 id., 410; *Lowndes* v. *Campbell*, 1 Hall, 598.)

The costs were properly allowed. They followed the result of the recovery, upon the report of the special tribunal appointed by the parties to try the issues joined in the action, as they would have followed the result of a like verdict upon the same issues, if they had been tried by a jury. I do not see that the manner of the trial can make any difference. (Code,

§ 304.)   Lord KENYON said, in *Lee* v. *Lingard* (*supra*): "Such finding is in the place of the verdict, and must be considered the same as if the jury had originally found so much to be due; and then all the same consequences ensue."   The English practice differs from ours, in requiring a verdict to be taken, to be modified according to the award of the arbitrator; but that is a difference of form and not of substance.   The sections of the statute prohibiting the recovery of costs in suits at law, against executors and administrators, where payment has not been unreasonably resisted or neglected, and where there has been no refusal to refer the claims, apply to suits commenced against such executors and administrators, and not to suits commenced against the testator or intestate in his lifetime.   I think the contrary construction given to this statute in *McCann* v. *Bradley* (15 How., 79), cannot be sustained. (2 R. S., 90, § 41; *Benedict* v. *Caffee*, 3 Duer, 669; *Lemen* v. *Wood*, 16 How., 286.)

There was no error in the judgment rendered at the special term, and the judgment of the general term should be reversed, and that of the special term affirmed.

ROSEKRANS, J., delivered an opinion to the same effect, and all the judges concurred.

> Judgment reversed, and judgment at special term affirmed.