## THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE BENEDICT, Appellant, v. THE BOARD OF SUPERVISORS OF ONEIDA COUNTY, Respondent.

*Claim against a county for the costs of a hearing before the governor to remove a county officer — the power of the board of supervisors to audit it — power of the said board to submit a claim to arbitration — 1874, chapter 323, at page 388.*

Under the provision contained in chapter 323 of 1874, that in all proceedings before the governor for the removal of any county officer upon charges preferred against him, all the costs and expenses thereof shall be a county charge upon such county, and shall be audited and allowed by the board of supervisors thereof, the board of supervisors has power, when a claim is presented

to it thereunder, to examine the items thereof and determine whether or not such costs and expenses were reasonable, and whether or not they were necessarily and properly incurred ; and as to these matters the court will not control the discretion of the board by a writ of *mandamus.*

*Semble,* that the board of supervisors has power to submit to arbitration the validity and reasonableness of a claim made against the county.

APPEAL from a judgment in favor of the defendant, entered upon an order overruling a demurrer interposed by the relator to a return to an alternative writ of mandamus.

*Ward Hunt, Jr.,* for the appellant.

*Johnson & Prescott,* for the respondent.

TALCOTT, P. J.:

The appeal in this case is from a judgment against the plaintiffs on a demurrer to a return, and a further and supplemental return, to an alternative writ of *mandamus,* requiring that the defendant do forthwith audit and allow the bill of costs and expenses incurred and paid by the relator, late sheriff of Oneida county, in certain proceedings taken before the governor of the State for the removal of the relator from the office of sheriff of Oneida county, amounting to the sum of $3,523.29, and the interest thereon from the time the same should have been paid, amounting in all to the sum of $3,774.67. An itemized bill and statement of accounts thereof had been presented to them at their (then) present session for audit and allowance, and the writ required that the amount of such costs and expenses when so audited and allowed by the said defendant, the defendant should cause to be included in the next annual assessment roll, and that the defendant do assess, levy and collect the amount so to be audited and allowed by the defendant as other county charges are levied and collected, to the end that the same might be paid over to the said relator as the law provides, or that the defendant show cause to the contrary thereof before the Supreme Court at a Special Term thereof, to be held at the court house in Utica on the 14th day of March, 1878. Motions to quash and supersede the writ were made on the return day but denied, but after the return the writ was modified as follows : "That the board of supervisors may audit and

allow the demand of the relator in the manner and to the amount claimed by the said board to be the legal audit and allowance of said claim, and that upon such action being taken, the said board of supervisors may finally adjourn." After the writ was so modified, the claim of the relator was duly audited and allowed at $2,500, and the amount paid to the relator, who received the same, and made protest, and the attorneys for the respective parties made a stipulation that such payment and receipt should not be considered prejudicial to the right of the relator to recover the balance of his account with interest, provided it should be decided that it was the duty of the board to audit and allow the whole of said account. The relator then demurred to the return and supplemental return, and the issue thus joined came on to be tried at a Special Term, held in Utica on the 9th day of April, 1878, when the relator's demurrer was overruled and a peremptory writ denied, with costs against the relator, and judgment was ordered to that effect, which was entered on the 16th of April, 1879, and from that judgment the relator appeals.

The board of supervisors in their return, amongst other things, state that they admit that a certain claim or bill was made and presented to the board by the relator substantially as alleged in the alternative writ; but they deny that the said board ever refused to audit or allow said bill or any part thereof, but on the contrary they aver that the said bill or claim was duly received by the said board, and was duly referred to a due and proper committee, of which the relator was duly notified and was cognizant; that the committee met to deliberate in respect thereof, and not being fully satisfied as to some of the items thereof, the chairman of said committee called on the relator and informed him that the committee were not unanimous in regard to some of the items, but that the committee proposed to report to the board that in the opinion of the committee a large portion of the bill was allowable, but as to some of the items they were not fully satisfied, and if he, the relator, would consent they would report a suggestion that the matter shall be referred to some competent tribunal to examine and report for the further action of the board. The relator said he was willing that it take that course, and thereupon, among other names, was suggested the name of B. J. Beach, a counselor-at-law residing

at Rome, in said county of Oneida, as a suitable referee. The relator stated that he would be satisfied with Mr. Beach, and it was then and there agreed that the matter should so be referred to the said Beach, and thereupon the said committee made their report to the board of supervisors. The report of the committee is set out at length in the return, and was in substance that, under the statute, the committee were of opinion that the county was liable for a portion of the charges contained in the bill, but that the bill contains items for attorneys fees amounting in the aggregate to $3,226 and interest, which is exorbitant and not a legal charge, and the committee recommended, in order to accomplish a speedy and just settlement of the same, and to avoid further cost and litigation, that the whole subject-matter be referred to a competent tribunal to investigate and determine at the earliest possible day to what extent and in what manner the county may be liable under the law, for the further action of this board. The return then further states in substance that said report of the committee was duly drawn and submitted to Mr. Benedict, who in looking at it said : "Do you mean by that report to say that the whole $3,233 is not a legal charge?" To which the chairman of the said committee replied: "No; only what may be held to be exorbitant." The relator then said in substance: "With that view of it I am satisfied," and it was then and there agreed that the report should be submitted to the board. Thereupon the report of the committee, duly signed by the eight members thereof, was duly submitted to the board of supervisors, and on motion of one of the supervisors it was ordered that the subject be referred to Mr. B. J. Beach to hear and report. The relator, who was present at the meeting of the board when the resolution to refer the matter to Beach was adopted, then said he wanted to get an early hearing, and said he would go up to Rome and leave with Mr. Beach what papers he wanted him (Beach) to have, and again stated that he did not want any delay by the committee, and the relator did leave his papers with Beach afterwards. Within a short time the relator appeared before the board and suggested that as there might be some question as to his (relator's) right to appear before the referee, he desired the board to pass a resolution authorizing him to appear, and at the request of the relator the board did pass a resolution to that effect ; that afterwards,

and on Monday the 7th of January, 1878, the relator and the committee of the board of supervisors did appear before said Beach by their respective counsel, and the questions then presented as to how far and for what amount the county was liable on the claim of the relator were fully discussed. Mr. Beach immediately prepared a report, which was delivered to the chairman of the committee, which is set out at full length in the return, and in the said report the said Beach stated as his conclusion that expenses incurred in prosecuting or defending against such proceedings (meaning the proceedings taken before the Governor to remove the relator from office of sheriff of the county of Oneida), are to be regarded as a legal county debt, to be examined and audited and paid like other claims against the county charged by law, but the board of supervisors is to pass upon the claims as in other cases. Unreasonable or unnecessary expenses are not to be allowed, because they have been incurred, and the said referee reported as the conclusion of his opinion of the matter that the necessary and reasonable expenses of the relator, including counsel fees under the law as it stands, are legitimate claims against the county, and should be audited and allowed to him as such. The return further states that on Friday, the fourth of January, upon the statement made by one of the supervisors, that it was arranged that the matter of the relator's claim should be heard on Monday, the seventh, who suggested an adjournment until Tuesday, the eighth of January, when the matter could be finally disposed of, and with that view the board adjourned until Tuesday, the 8th of January, 1878. But before this time and before the report of Mr. Beach was delivered to the board, and whilst the said board of supervisors was only waiting for said report of Mr. Beach, the referee agreed upon by both parties to decide the legal question which had been submitted to him as to what principle ought to be adopted by the board in auditing and allowing the claim of the relator, the writ of alternative *mandamus* was served upon the chairman of the board, and the return further states that the board of supervisors proceeded in good faith in respect to such claim, and has always intended to act in a fair and legal manner upon said claim, and but for the service of the said writ the said claim would have been fairly and legally audited and allowed. The demurrer admits the truth of all the material allegations of the

return. It is difficult to see why the agreement of the parties to refer to Mr. Beach the question whether the supervisors were bound to accept the claim of the relator, or whether they could lawfully audit and allow it, as is customary with other county charges, exercising a *quasi* discretion concerning the allowance of particular items of the relator's claim, did not amount to a submission of that question by *parol* to the arbitration of Mr. Beach. That it was the intent and understanding of the parties that that particular question should be submitted to Mr. Beach as a "referee," cannot be doubted; and whether called a "referee" or "arbitrator" is immaterial. One item or subject constituting a part of matters of difference between parties may be submitted to arbitration by itself. A declaration of the parties to a submission that it should not be deemed a submission to arbitration is ineffectual. (*Merritt* v. *Thompson*, 27 N. Y., 225.) There does not appear to have been any attempt on the part of the relator to revoke the submission. He appeared by counsel and argued his view of the duties of the board of supervisors under the act, and after the referee had decided against him undertook to revoke the submission and treat it as a nullity. The general rule is, where there is capacity to contract and liability to pay, there is power to arbitrate. A municipal corporation may submit to arbitration by resolution of the council. (*Brady* v. *The Mayor of Brooklyn*, 1 Barb., 584.)

The duties of a common council and a board of supervisors in respect to the auditing of accounts are quite similar. At all events it was an agreement which must be taken to have authorized the board to have audited and allowed the account in the manner indicated by the opinion of Mr. Beach, and there can be no foundation for the belief that the board was contumacious or designedly refused to obey the statute. But, moreover, we are of the opinion that under the statute the board of supervisors was not bound to accept the claim of the relator and audit and allow it at its face, without any regard to the question whether the services and costs and expenses charged for, were reasonable or necessarily or properly incurred, in the defense of the relator against the charges preferred before the governor or not. The full history of that act is given in the opinion by Mr. Beach, which is contained in the return of the writ of alternative *mandamus*. The act is to be found in the Session

Laws of 1874, at page 388, chapter 323, and simply provides that in all proceedings before the governor for the removal of any county officer upon charges preferred against him, all the expenses thereof, including the taking and printing of the testimony, shall be *a county charge* upon such county, and shall be audited and allowed by the board of supervisors of such county, and be included in their next annual assessment roll, etc. " We think the ' *expenses thereof* ' mentioned in the statute are to be audited and allowed as other county charges are to be audited and allowed, and the expenses to be paid by the counties to which the assailed officers belong, means only the legitimate and fair expenses of the proceeding, and not any extravagant amount which the officer may have paid or agreed to pay either for counsel fees or other purposes." The relator's claim in this case embraced sundry items which were not a part of the legitimate expenses of making a defense against the charges, as for instance, the relator's bill or claim in this case contained a charge of seventy-five dollars for publication in a daily newspaper of the " briefs " of counsel in regard to the matter. This was unnecessary, and published not as a necessary part of the defense, but for personal ends. The claim also contained many other items, as to which it was at least questionable whether they constituted any part of the necessary or proper costs and expenses of the defense of the relator before the governor. To " audit " is to examine and adjust an account or accounts. The term " auditor " is defined as " a person authorized *to examine* an account or accounts, compare the charges with the vouchers, examine parties and witnesses, *allow or reject* charges, and state the balance." Such are the duties which the board of supervisors, by the aid of their committees, are expected and required to perform in regard to all claims made by law county charges, when no specific sum is stated in some statute requiring the payment by the county of that specific sum, or in a case where the charges are definitely fixed by some law, and where after *ascertaining the fact,* nothing remains but simple ministerial or arithmetical duties to be performed by the auditing tribunal. The office of a *mandamus* is to compel an inferior tribunal to act in pursuance of its duties, not to compel it to act in a particular manner. (*The People* v. *Stocking,* 50 Barb., 573 ; *Judges of Oneida Com. Pleas* v. *The People ex rel. Savage,* 18 Wend.,

79; *Howland* v. *Eldridge*, 43 N. Y., 457; Wood on Mandamus, 94, 95.)

The relator's counsel, who claims, as we understand, in effect, that the board of supervisors of a county whose office is sought to be removed by proceedings before the Governor, is bound to pay whatever amount the officer may have paid or incurred, not only as the legitimate expenses of defending himself against the charges made against him, but whatever he may have paid or incurred and which he *claims* as such legitimate expenses, and have no power to audit and determine what are the proper and legitimate expenses of such defense; and to sustain this position he principally relies on the case of *The People ex rel. The Otsego County Bank* v. *Supervisors of Otsego Co.* (51 N. Y., 401). In that case it was held that the act (ch. 938 of the Laws of 1867) authorizing the board of supervisors to hear and determine certain claims for illegal assessments on United States securities, and to repay the amount of taxes collected on such securities is mandatory; and that upon the presentation of a claim made thereunder the only questions to be determined by the board of supervisors in reference to which it has any discretion are, whether the claimant has such a claim, and if so, the amount thereof; and where the fact of the existence of the claim is undisputed the board has no authority to reject it as *illegal*, and it can be compelled by *mandamus* to exercise its discretion upon the facts and the amount of the allowance. The facts were not disputed, but the supervisors adopted a resolution that the *claim was invalid;* and it was held that a *mandamus* directing the defendant to hear the claims of the relator, and to determine whether it had paid the taxes as stated, and *if so* to allow the amount thereof and cause the sum to be collected as prescribed, was proper. The opinion in that case says: "They have no right to reject a claim as *illegal* which the law plainly requires them to allow. * * * Where the supervisors refuse to audit and allow a *legal* claim on the ground that it is illegal, they do not exercise the discretion which the law vests in them. * * * Whether these facts were true or not, the board of supervisors was bound to determine; and if it found the facts to be true, then it had no discretion left and was bound to cause the money paid to be refunded. * * * They do not report that they have examined

and inquired into the facts, or that any of the statements contained in the affidavit of the claimant were untrue. They simply report that they have examined the claims, and that it would be unjust for the county and towns to refund the taxes. Then the board of supervisors adopted a resolution reported by the committee that the *claim was invalid.* * * * The claim was evidently rejected simply because it was unjust and illegal. The legislature had determined that the claim for taxes illegally exacted, as mentioned in the act, was both just and legal, and the only questions to be determined by the board of supervisors in reference to which it had any discretion, were whether the claimant had such claims and the amount of them." The counsel for the relator also refers to the case of the *People ex rel. Curry* v. *Green et al.* (64 Barb., 493), *constituting the board of apportionment and audit of the city of New York,* in which it was held that the board of audit cannot be compelled by *mandamus* to allow a claim against the county which had been determined and allowed by the board of supervisors. But that the board of audit had a right to review the action of the board of supervisors, and allow or disallow according to the facts. This case involved the construction of a particular statute and has no bearing on the case at bar. He also refers to the case of *Lower* v. *United States ex rel., etc.* (1 Otto, 536). In that case a statute of Illinois required a board of town auditors to audit charges, including judgments against the town, in order that provision for paying them might be made by taxation. It was held that when a *judgment against the town* was rendered by a court having jurisdiction of the parties and subject-matter, auditing is a mere ministerial act, not involving the exercise of judicial discretion, the performance of which can be compelled by *mandamus.*

So in the other cases cited by the counsel for the relator (*People ex. rel. Johnson* v. *Supervisors of Delaware,* 45 N. Y., 196), it was held "that when an account is presented of services which are *legally* chargeable to the county, it is the duty of the board of supervisors to audit and allow it. But how much shall be allowed rests in its discretion in subserviency to law. We think these precedents cited in behalf of the relator so far from establishing his right to a peremptory *mandamus,* only tend to confirm the views stated by Mr. Beach in his opinion, and the opinion

delivered at the Special Term. When the law has declared that certain claims shall be a debt of the county, then the supervisors cannot reject the claims upon the idea that they are not valid and legal claims against the county; but if they admit all the facts upon which the claims are legally founded, they must audit and allow them; but where any of the facts material to the existence of the claim are disputed, then the point arises at which their judicial discretion is called into exercise and they cannot be compelled by *mandamus* to decide this question in any particular manner. They were obliged to decide as a matter of judicial discretion what the legitimate costs and expenses of the relator's defence in *fact and law were*, and having decided this question, they cannot, by *mandamus*, be compelled to reverse the decision which they have made. The judgment is affirmed, with costs of the appeal to be paid by the relator.

Present — TALCOTT, P. J., SMITH and HARDIN, JJ.

Judgment affirmed, with costs to be paid by the relator.