THE MERCHANTS and MINERS' TRANSPORTATION COM-
PANY *vs.* WILLIAM E. STORY.

*Liability of a warehouseman—Reasonable care in the Safe-
keeping of goods ready for delivery—Negligence—Exclusion
of Evidence as to a Custom—What is required to sustain a
Prayer denying the right of recovery upon the finding of
certain enumerated facts.*

On 9th September, 1876, the appellee shipped from Boston to Balti-
more, by one of the appellant's steamers sundry boxes of books and
other property under a bill of lading containing a clause, that
freight must be removed from the wharf at the place of discharge,
during business hours on the day of its discharge; or it was liable
to be stored at the risk and expense of the owner; all merchandise
at owner's risk while on the wharf. The steamer arrived at Balti-
more on the 12th September, and the goods on that day were
unladen and put on the appellant's wharf in the place set apart for
Boston freight; and a notice was mailed to the appellee stating
that the goods were ready for delivery and must be removed within
twelve hours, or they would be stored at the appellee's risk and
expense. The appellee did not receive this notice and did not call
for his goods till the 18th September, when he found the books
were damaged by water. This injury was occasioned by water
flooding the wharf during a storm of rain and south-east wind of
unusual violence which had occurred on the previous day, Sunday.
The wharf was well covered, and in other respects, save its proximity
to the water, was a secure place for the storage of goods, and watch-
men were employed, one by day and one by night, to protect the
shed and its contents. It was shown that this was the first time
the part of the wharf where these goods were stored had been sub-
merged, though another part of the wharf had been submerged once
before, during a period of about twenty years; that the premonitions
of a violent rain-storm and rise of the water before eight in the
morning were observed, and that it began to rain very heavily about
noon, the water rising steadily all day, and that about two in the
afternoon, the water came with a rush on the wharf and the watch-
man then did all he could to remove the goods up higher, but was

Merch. & Miners' Transportation Co. *vs.* Story.

compelled by the rise of the water to desist, as there were no steve-dores about, and no assistance to be had. In an action by the appellee to recover for the injury done his books, it was HELD:

That the appellant had not exercised such reasonable care as the law requires of a warehouseman in the storage and safe-keeping of the goods in question, and that reasonable care means such care as a prudent man would give to the keeping of his own goods of like kind and under like circumstances.

Evidence that it was the custom of the appellant to store goods of its employers on the wharf, was properly excluded from the considera-tion of the jury; as such a custom was not sufficient to discharge the appellant from its liability to the appellee.

To sustain a prayer, that denies the right of recovery upon the finding by the jury of certain facts therein enumerated, there must not only be proof to support its hypothesis, but the facts stated must of themselves constitute a complete bar to the action, notwithstanding the truth of all other facts in the cause and all inferences fairly deducible therefrom.

APPEAL from the Superior Court of Baltimore City.

The nature of this case and the pleadings and facts are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered seven prayers, all of which the Court, (DOBBIN, J.) rejected, ex-cept the sixth, which was granted and is as follows:

6. That the custom of the defendant to store goods of its employers upon said wharf, as testified to by the defen-dant's witness, is not sufficient to discharge the defendant from its liability to plaintiff for said damage, and must be excluded by the jury in their consideration of the evidence in this case.

The defendant offered the following prayers:

1. If the jury shall find that the goods mentioned in the evidence were delivered by the plaintiff to the defend-ant, to be transported from Boston to Baltimore, and arrived in Baltimore on the 12th day of September, 1876, and were the same day or the day following unladen upon

the wharf of the defendant, and that the said wharf was well roofed over and floored, and enclosed on two sides permanently, and on another side by sliding doors, which were closed at night and on Sunday, and that a watchman was employed on the premises by day and by night, for the protection of the wharf and its contents; and shall further find, that the plaintiff arrived in Baltimore to reside on the 12th day of September aforesaid, and made no request for his goods or enquiry concerning them, until September 18th, because he was not ready to receive them before said last named day, and that they remained in the custody of the defendant and its agents until September 18th, and that on the 17th day of September, the goods were injured by the submersion of the wharf by water, caused by an unusual and unexpected high tide, and that the portion of the wharf upon which the goods were placed had never been submerged upon any previous occasion, then their verdict should be for the defendant.

2. If the jury shall find all the facts set forth in the first prayer of the defendant, and that the 17th day of September was Sunday, and that the watchman in charge of the wharf did not remove the goods, because there was no place of more safety accessible to him to which he could have removed the goods of the plaintiff and the other goods on the wharf, with the means at his command, then their verdict should be for the defendant.

3. If the jury shall find all the facts set forth in the defendant's first prayer, and shall further find that the plaintiff was unknown to the agents and servants of the defendant, and that the notice offered in evidence was written by an agent of the defendant, and mailed in Baltimore, on the 12th day of September last, and was not received by the plaintiff until after the 17th day of September, because he failed to go to the post-office, then their verdict should be for the defendant.

4. If the jury find all the facts set forth in the first, second and third prayers of the defendant, their verdict should be rendered in its favor.

5. If the jury shall find that the goods mentioned in evidence, transported by the defendant from Boston to Baltimore, upon one of its steamers, under the terms of the bill of lading offered in evidence, were unladen in good order upon the wharf of the defendant in the city of Baltimore, on the 12th day of September, 1876, and that the plaintiff came to Baltimore to reside on the said day, and was unknown to the defendant and its agents, and that on said last named day the notice offered in evidence, addressed to the defendant, was placed in the post-office at Baltimore, and was not received by the plaintiff in due course of delivery, because he failed to enquire at the post-office for letters addressed to him, then the responsibility of the defendant as a common carrier of said goods had ceased before the 17th day of September following, and it was on said last named day responsible only if it failed to take ordinary care of said goods.

6. If the jury find the facts set forth in the fifth prayer of the defendants, and that the plaintiff made no enquiry about his goods, nor requested their delivery to him at the wharf of the defendant until the 18th day of September, 1876, because he was not ready to receive them, and that the wharf of the defendant is in part covered by a large shed, well roofed and floored, permanently closed on two sides, and on the side next the water by sliding doors, which are closed at night and on Sunday, and the said shed was the place in which the defendant had been accustomed to store its Boston freight for many years before the said 17th day of September, 1876, and that said shed was well protected from the weather, and that no part of the shed had been submerged more than once before said date, during a period of about twenty years, and that the goods of the plaintiff were placed by the defendant in said shed on the

highest point used for the storing of Boston freight, and that the part of the shed in which said goods were placed had never been submerged before said day; and shall further find that the defendant kept in its employ during said month of September, careful and competent watch-men, whose duty it was to guard and protect the shed and its contents by night and day, and that the goods of the plaintiff were injured by the submersion of the wharf, on Sunday, the 17th day of September aforesaid, by reason of an extraordinary tide, and that the watchman in charge of the wharf that day could not have prevented said injury with the means at his command, then that the proof does not establish such want of ordinary care which could entitle the plaintiff to a verdict.

The Court rejected the prayers of the defendant and gave an instruction which is stated in the opinion of this Court. To the granting of the plaintiff's sixth prayer, to the rejection of the defendant's prayers and to the instruction given by the Court, the defendant excepted, and the verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ALVEY, J.

*William A. Fisher*, for the appellant.

Under the terms of the contract between the parties, the appellant was not obliged to store the goods at once, but had the option to do so or not, and so long as the goods remained on the wharf they were at the risk of the appellee.

The provisions of the contract were inserted for the purpose of altering the obligation of the carrier as to storing the goods.

It was not an unreasonable time (from the 12th to the 17th day of September,) to retain the goods on the wharf,

in the expectation that the appellee would call for them, in accordance with the notice to him.

Even if there was any obligation to store the goods immediately, the appellant complied with its duty. The wharf was so constructed that it could be.properly used as a place of storage, had long been so employed, and was in fact the only store-house of· the appellant. The appellant was under no obligation to provide a warehouse elsewhere.

The only ground upon which the appellant can be charged, is, that it was guilty of some negligence after the goods were landed upon the wharf. The jury were directed generally to pass upon the question whether there was such negligence. Such an instruction was erroneous under the circumstances of the case. There were no disputed facts and the case as made out, showed that the appellant had provided a proper and safe place for the goods, had caused them to be properly watched, and had taken every reasonable precaution. It had no reason to apprehend injury from the tide, as the goods were in a place which had never been reached by the tide before, and the tide on Sunday, September 17th, was an unprecedented one, which rose not only to a height, but with a rapidity entirely unexpected.

It was the duty of the Court to have instructed the jury that the appellant had done all that was required of it by law. *Penn. & Del. &c.·S. Nav. Co. vs. Hungerford,* 6 *G. & J.,* 297; *Ewalt vs. .Harding,* 16 *Md.,* 170; *Pittsburgh & Conn. R. R. vs. Andrews,* 39 *Md.,* 342.

The sixth prayer of the appellant put the case properly before the· jury.

*C. A. E. Spamer* and *Thomas J. Morris,* for the appellee.

The plaintiff's sixth prayer is right, *because* a custom of this defendant alone, not shown to be either known to plaintiff, or to be a custom of trade at the place, or to be reason-

able and lawful in itself, cannot bind the plaintiff. *Foley vs. Mason,* 6 *Md.,* 49.

The Judge's instruction is entirely right. and at least as favorable to defendant as he could demand. The principal points were rightly stated, viz: the duty of storing in a safe place; and the reasonable care of a prudent man; and were left to the jury in the plainest manner, submitting to their finding the questions of fact, viz: the *safety of the place,* and the *reasonableness of the care.*

The defendant's first prayer is erroneous, because it seeks to take from the jury their legitimate right and duty to find whether *in fact* the place of storage was safe.

The defendant's second prayer is erroneous, because it still further seeks to take the finding of that fact from the jury, because a watchman had no place of safety 'accessible to him. If not safe before, that only made the case worse.

The defendant's third prayer does not help the matter by adding that *plaintiff was unknown, because* that could not excuse defendant if it had stored goods in an unsafe place.

The defendant's fourth prayer adds nothing to the three preceding.

The defendant's fifth prayer might have been law if it had not placed the question of the liability of defendant on an erroneous ground, viz: plaintiff's *failure to inquire,* thus implying a duty to inquire, and misleading the jury to consider that instead of the safety of the defendant's keeping. Even if law, the Judge's instruction entirely superseded it.

The defendant's sixth prayer is erroneous, *because* after stringing all the facts together again, it asks the Court to say what the jury only could, viz: that "the proof does not establish such want of ordinary care which could entitle the plaintiff to a verdict."

The whole case rests on *two questions,* which were fairly submitted to the jury, viz:—

1st. Whether the place of storage was safe. 2nd. Whether defendant used reasonable care.

The defendant sought to exclude these questions from the jury.

The grounds for such attempts, as contained in his prayers, may be enumerated thus:—

1. A custom of defendant to store in a particular place, or in a particular manner, without regard to its safety, or any knowledge thereof by plaintiff.

2. The enclosure of a wharf on *three* sides, whether safe or not.

3. The employment of watchmen.

4. The plaintiff, being unknown, not calling for his goods, although notified.

5. That a wharf is a safe place for storage of goods, because it had never been submerged *but once before;* and this flood was extraordinary.

6. Because the watchman on Sunday could not find a safe place to put the goods in.

Neither one of these facts, nor all together, constituted any reason why the Court should not have submitted to the jury, as it did, the questions of fact upon which the liability depended.

A ship being a common carrier, must store, and if it undertakes to use its wharf as a store-house, it must show, *as a fact,* that it is safe. It cannot escape the ordinary duty to store, by *saying only* the wharf is *a store,* good enough for the purpose. It may, indeed, say so, but if so, it must *prove it.*

The whole question turns on the attempt of defendant to escape even the obligation of a *warehouseman,* by trying to avoid the obligation of showing that the place was a safe warehouse.

The following authorities among many, in England and America, would seem to place beyond question the duty on ship-owners of storing freight in a safe place.

*Edwards vs. The Baltimore Fire Insurance Co.,* 3 *Gill,* 188, and the passage from *Starkie on Evidence,* there referred to; "*The Eddy,*" 5 *Wall.,* 495; *Richardson vs. Goddard,* 23 *How.,* 39; *Rawson vs. Holland,* 59 *N. Y.,* 615, 616 *and* 619.

In *Mitchell vs. Lancashire, &c. R. Co., L. R.,* 10 *Q. B.,* 256, 262, the defendants sent notice that they would hold, "not as common carriers, but as warehousemen;" and the goods were damaged by rain. The defendants were held liable. See also *Bourne vs. Gatliffe,* 4 *Bing.,* (*N. C.,*) 314; 3 *Man. & G.,* 643, *in Ex. Ch.;* 11 *Cl. & F.,* 45, *in H. L.; and Cairns vs. Robins,* 8 *M. & W.,* 258; *Redmond vs. Liverpool Co.,* 46 *New York,* (1 *Sickells,*) 583; *Story on Bailments,* sec. 545; *Ostrander vs. Brown,* 15 *John.,* 43.

The opinion in *Boyle vs. McLaughlin,* 4 *H. & J.,* 300, seems applicable here. Flour was there placed on a wharf and injured by a freshet. The Judge asks "why was it not stored?" "Owners of ships, vessels, * * including steam-vessels, * * belonging to internal as well as coasting and foreign navigation," are common carriers. 2 *Kent,* 599.

"The carrier must not leave or abandon the goods on the wharf, even though there be an inability or refusal of the consignee to receive them." 2 *Kent,* 604.

"If the consignee is dead or absent, or has refused to receive the goods," the carrier "is not justified in abandoning the goods, as by leaving them unprotected on a wharf; his duty, on the contrary, being to secure them for the owner." *Angell on the Law of Carriers,* sec. 291.

"But the cases all agree that in regard to carriers by ships and steamboats, nothing more is required in the absence of special contract, than landing the goods at the usual wharf, and giving notice to the consignee, and keeping the goods safe a sufficient time after to enable the party to take them away. After that the carrier may put

them in warehouse, and will only be liable as a depositary for ordinary neglect." *Redfield on Carriers, secs.* 108, 120.

MILLER, J., delivered the opinion of the Court.

The appellant, a Maryland corporation, engaged in carrying passengers and freight between Boston and Baltimore, was sued by the appellee, for damage to certain books which had been brought to the latter city in one of the company's steamships. The declaration charges that the defendant agreed to carry said goods from Boston to Baltimore, and safely keep them in Baltimore until it delivered them to the plaintiff, but did not so safely keep the same, but carelessly and negligently permitted said goods while in its possession, to be greatly damaged and injured by water, when it might by reasonable and ordinary care and diligence have prevented such damage and injury. The defendant pleaded that it did not commit the wrong and injury alleged, and the case was tried before a jury upon issue joined on that plea.

The proof shows that the books packed in boxes were shipped at Boston, on the 9th of September, 1876, under a bill of lading, which stated that "freight carried by this company must be removed from the wharf at Boston and Baltimore, during business hours on the day of its discharge, or it is liable *to be stored* at the risk and expense of the owner; all merchandise at the owner's risk while on the wharf."

The books arrived safely in Baltimore on the 12th of September, and were put on the company's wharf in the place set apart for Boston freight, where they remained until the 18th of that month. On the day of their arrival, the company addressed and mailed a letter to the plaintiff, giving him notice that the goods were ready for delivery, and stating that they "must be removed within twelve hours, or they will be *stored* at your risk and ex-

pense." The plaintiff did not receive this notice, and did not call for his books until Monday, the 18th of September, when he found them injured and damaged by water. This injury was occasioned by water flooding the wharf during a storm of rain and south-east wind of unusual violence, which occurred on Sunday the 17th of September. The wharf was well covered, and was in other respects, save its proximity to the water, a safe and secure place for the storage of goods. As to the facts thus stated there is no dispute. There is, however, other evidence in the record which will be noticed presently. Upon all the evidence the Court, in lieu of certain prayers offered by the plaintiff, instructed the jury that if they found "that the plaintiff delivered to the defendant in good order the goods mentioned in the testimony, to be transported for hire from Boston to Baltimore in one of the defendant's steamships, and to be there delivered to the plaintiff in like good order, upon the payment of said hire, and the defendant signed and delivered to the plaintiff, the bill of lading offered in evidence, and did transport the said goods to Baltimore, and landed them in good order upon the said defendant's wharf in Baltimore, on the 12th of September, 1876, and thereupon addressed and mailed the notice to the plaintiff given in evidence, then at the end of the business day of the 12th of September, the relation of the defendant to the said goods as a *common carrier* ceased, and the said defendant held the same goods thereafter as a *warehouseman,* subject only to the liabilities which appertain to that relation; that as such warehouseman, the said defendant was bound to use reasonable care in storing said goods in a place of safety according to their kind, and then by the practice of the same care keeping them from injury till called for by the plaintiff; that reasonable care in this connection means such care as a prudent man would give to the keeping of his own goods of like kind and under like circumstances; and if the jury shall

find that the defendant did not exercise the care above defined, and that the goods were injured for the want of the same, then they will find their verdict for the plaintiff, and will give him such damages as they shall think he has sustained, and if they shall find that the defendant did exercise such care, then they will find their verdict for the defendant."

As to the law of this instruction, there can, we think, be no well founded objection. In our opinion it correctly interprets the contract between the parties, and correctly states the obligations which the law imposed upon the defendant after the goods had been transported. This, in fact, was not seriously controverted in argument by the appellant's counsel, but he insists that under the circumstances of the case, there was no negligence on the part of the appellant, and the Court ought to have so instructed the jury. This question is not raised by an exception to the instruction under rules 4 and 5, (29 *Md.*, 2,) that there was *no evidence* from which the jury could find that the defendant did not exercise such reasonable care as the instruction defines, but it is argued that it is properly raised by the Court's refusal to grant some of the defendant's prayers. Each of these prayers on the part of the defendant *denies* the right of recovery upon the finding by the jury of certain facts therein enumerated. To sustain a prayer of this character there must not only be proof to support its hypothesis, but the facts stated must of themselves constitute a complete bar to the action, notwithstanding the truth of all other facts in the cause and all inferences fairly deducible therefrom. Now the facts stated in these prayers, (apart from the secure construction, covering and protection of the wharf, rendering it in that respect a fit and safe place for the storage of goods, and the employment of a careful and competent watchman to guard and protect the shed and its contents,) are, that before this day no part of this shed or wharf had been

submerged more than once during a period of about twenty years, and that the part of it where these goods were placed had never been submerged before, and that the submersion of the wharf and injury to these goods on that day were caused by an unusual, unexpected, and extraordinary high tide, and that the watchman then in charge could not have prevented the injury with the means at his command, and that there was no place of more safety to which he could have removed the plaintiff's goods and the other goods on the wharf with the means at his command. But there is evidence in the record showing that at other times the water had risen within a few feet of the floor of the wharf, and on one occasion at least during a storm accompanied by a south-east wind, three-fourths of the wharf was submerged, and a rise of a *few inches* more would have brought the water upon that part of it where the boxes containing these books were placed; that though placed on the highest part of the wharf allotted for storage of Boston freight, they were not on the highest portion of the whole wharf, and that if they had been placed or removed to such highest place, it is doubtful whether they would have suffered any injury; and certainly it is just and fair to infer if they had been so placed or removed, they would not have been damaged to the extent they were by remaining in the place they were put upon being landed from the vessel. The natural and necessary effect of a strong south-east wind is to drive the water from the bay and river in and upon the city wharves in this locality, and when such wind is co-incident with a flood-tide the rise of water is increased, and the danger of overflow is proportionate to the duration and violence of the storm. Of these natural consequences, as well as of the time of the tides, the agents of the company are presumed to have knowledge and were bound to take notice. Again, according to the testimony of the watchman, who on that day took the place of the defend-

ant's regular watchman, and was the sole person charged and entrusted with the care and custody of all the freight on this wharf during this stormy day, it appears that the wind was from the south-east, and it was raining when he went on duty before eight o'clock in the morning, and it commenced raining very heavily about noon, and he says " the tide was *rising steadily all day,* but it came with a rush about two o'clock, and the water came upon the wharf, and he commenced removing the goods from the lowest point up higher, and worked away until he was up to his knees in water when he was compelled to desist, and that there were no stevedores about or assistance to be had." It thus appears, that the danger did not come unannounced or in the night, but that there was timely notice given of its approach in the morning, and that the water was gradually rising while the storm was increasing in violence, and yet no assistance was procured nor any effort made to obtain it, and no watchfulness or judgment exercised as to the probable effect of the wind and tide, but the security and safety of all the freight on this wharf was left during the entire morning and day to the unaided exertions of one man. In view of these facts and reasonable inferences, we cannot say the Court was in error in rejecting these prayers of the defendant, nor does it seem to us to be such an exceptional case as would have justified the Court in saying there was *no evidence* of negligence, and in taking the case from the jury on that ground.

The rulings of the Court upon the other instructions asked by the defendant, and in granting the plaintiff's sixth prayer, are so obviously correct as not to require further notice.

*Judgment affirmed.*

(Decided 24th July, 1878.)