WILSON v. WYCKOFF, CHURCH & PARTRIDGE.

(Supreme Court, Appellate Division, First Department. June 18, 1909.)

1. BAILMENT (§ 33*)—KEEPING OF AUTOMOBILES—BREACH OF CONTRACT—EVIDENCE—QUESTIONS FOR JURY.

The evidence in an action against the keeper of a garage for breach of a contract under which defendant was to keep plaintiff's automobile in his garage and not allow it to be taken out at night without plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff's written order *held* sufficient to make the question of defendant's negligence in allowing the automobile to be taken out without a written order one for the jury.

[Ed. Note.—For other cases, see Bailment, Dec. Dig. § 33.*]

2. BAILMENT (§ 31*)—NEGLIGENCE—CARE OF AUTOMOBILES—BREACH OF CONTRACT—SUFFICIENCY OF EVIDENCE.

Evidence in an action for breach of the contract under which defendant was to keep plaintiff's automobile in his garage and not allow it to be taken out at night without a written order from plaintiff *held* sufficient to justify the jury in finding that defendant was negligent.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 131; Dec. Dig. § 31.*]

3. BAILMENT (§ 17*)—CARE OF AUTOMOBILES—CONSTRUCTION OF CONTRACT.

A contract by the keeper of a garage to keep plaintiff's automobile and not allow it to be taken out after night without a written order from plaintiff protects plaintiff against the act of his chauffeur in taking the automobile out without such order.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 75; Dec. Dig. § 17.*]

Houghton and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Henry R. Wilson against Wyckoff, Church & Partridge. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Frederick S. Randall, for appellant.
J. Frederick Eagle, for respondent.

SCOTT, J. The question of defendant's negligence was essentially one for the jury, and was fairly submitted by the court. All the evidence upon the subject was that which was furnished by defendant's employés, and may therefore be assumed to be as favorable to defendant as the truth would permit. It may be that the evidence did not convict the defendant's doorman of negligence, but it does not follow that defendant showed proper diligence in devising and putting into effect methods which would more effectually prevent chauffeurs taking out motor cars improperly. Indeed, the whole defense is that defendant adopted a method which ought not to be expected to be effective at what are called "rush" hours. It is difficult to believe that some more effective means might not have been adopted, and the jury were justified in finding that the failure to adopt, or at least try, some other method, constituted a lack of due care on defendant's part. It is no answer to say that the chauffeur was plaintiff's servant, for defendant's contract explicitly was to protect plaintiff against his own servant's acts. So far as regards the measure of damages, I concur with Mr. Justice HOUGHTON.

In my opinion, the judgment should be affirmed, with costs.

INGRAHAM and McLAUGHLIN, JJ., concur.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOUGHTON, J. (dissenting). The defendant is a corporation, and maintains a garage in the city of New York for the care and storage of automobiles for hire. The plaintiff placed his automobile in defendant's care under a written contract, one of the stipulations of which was that the machine should not be taken from the garage at night without the plaintiff's written order.

In order to regulate the taking out of the machines by the various chauffeurs, and to insure against a machine being taken out by the wrong driver, the defendant established a system of recording, and on the machine leaving the garage its number, make, name of owner and of chauffeur, together with the time of departure, were all recorded. In addition to this, a watchman was stationed at the door, whose business it was to see, not only that the sidewalk and street were clear, but that the proper chauffeur was driving the machine of his employer and had the requisite order.

Necessarily, the chauffeurs had access to the garage and to their various machines for the purpose of oiling, testing the engine, and the like. Just prior to the opening of the theaters is what is termed the "rush" hour, when most of the machines in defendant's charge are customarily taken out. They ordinarily come in from the afternoon's drive around 6 o'clock, and stand around ready for use, not being installed in their regular place until after they are washed and polished some time during the night. The chauffeur in the employ of the plaintiff had requested the defendant to permit him to take out his employer's machine at night without a written order, and the defendant had refused to permit him to do so. On the afternoon of the 4th of May, at about 5 o'clock, the plaintiff's chauffeur brought his machine to the garage. During the height of the rush hour, a few minutes before 8 o'clock, the watchman at the door observed the plaintiff's machine, in which the plaintiff's chauffeur was seated, come up quickly behind an outgoing machine. He held up his hand and shouted to him to stop and produce his order to take out the machine. Instead of obeying, the chauffeur put on speed, dashed through the doorway, turned the corner of the street, and was out of sight almost immediately. The next morning the automobile was found on Long Island, considerably injured, and bearing evidences of a head-on collision. Thereupon the owner, this plaintiff, brought action against the defendant for damages on the ground that the defendant did not exercise ordinary care in preventing the machine in leaving its garage without plaintiff's written order. The jury rendered a verdict in plaintiff's favor, from which the defendant appeals.

There was no proof whether or not the carelessness of the chauffeur or of some other person produced the injury to the automobile, and it was not incumbent upon the plaintiff to make such proof. The defendant was a bailee for hire by contract, and as such it was under legal obligation to exercise with respect to plaintiff's property such ordinary care as a man of ordinary prudence and discretion ought to exercise and would be expected to exercise under all the circumstances if the property were his own. While the term "negligence" is used in the law of bailment, it is so used only in the sense of the lack of

care. The failure to give ordinary care constitutes ordinary negligence, as the term is used in the law of bailment for hire. Where a bailor sues his bailee for loss of his goods or damage to them, the burden of showing lack of care respecting the property, or negligence in caring for it, is upon him, and such burden is not shifted to the bailee, but always remains with the bailor. Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467.

When the bailor has proved, however, that the bailee has broken his contract by wrongful connivance or culpable exposure, or remissness of duty, or lack of ordinary care respecting the goods in his charge, or is guilty of negligence in permitting them to go out of his custody, the bailee is not excused because some other agency brought about the ultimate injury to the property, or even if the injury is caused by some irresistible force. Schouler on Bailments (3d Ed.) § 101. If the bailee for hire fails to use ordinary care and is guilty of negligence respecting the property left in his custody, he is not excused from liability by showing that the final destruction or damage to the property was brought about by robbery (Claflin v. Meyer, supra) or flood (Powers v. Mitchell, 3 Hill, 545; M. & M. Trans. Co. v. Story, 50 Md. 4, 33 Am. Rep. 293; Smith v. Meegan, 22 Mo. 150, 64 Am. Dec. 259), or fire (Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215; Stevens v. B. & M. R. Co., 1 Gray [Mass.] 277), or collapse of the building (Kaiser v. Latimer, 40 App. Div. 149, 57 N. Y. Supp. 833). The breach of the contract in failing to exercise ordinary care and acting negligently is deemed the primary cause of any subsequent disaster to the property, except, of course, inherent decay or death from natural causes, as in the case of animals. Agisters of cattle are bailees for hire, and are responsible only for ordinary negligence. "It will, however, be such negligence for an agister or his servants to leave open the gates of his field; and if, in consequence of such negligence, the cattle stray away and are stolen, he will be responsible for the loss. Story on Bailments (7th Ed.) § 443.

Upon a like principle, therefore, if the defendant was negligent in permitting the plaintiff's chauffeur to take from its garage the plaintiff's automobile in the nighttime without a written order, that lack of care and breach of contract was the primary cause of any injury to the machine, however brought about. If the machine had not been out of the garage, it could neither have run into anything nor would anything have run into it. It was not incumbent, therefore, upon the plaintiff to prove that the ultimate injury to the machine was not caused by the negligence of his chauffeur or of some other person. Proof of want of ordinary care on the part of the defendant in permitting the machine to be taken out of the garage without a written order, contrary to the express contract of bailment, was sufficient to establish a prima facie cause of action.

But applying these rules, I am of opinion that the verdict of the jury that the defendant was guilty of lack of ordinary care was against the weight of evidence. The defendant had the right to assume that plaintiff's own servant and chauffeur was ordinarily honest and would obey the rules of the establishment. In the contract of

bailment, the plaintiff vouched for the honesty of any chauffeur that he might employ. He had previously asked to be allowed to take out the machine in the nighttime without a written order from his employer, and had been refused and had acquiesced in the refusal. It was a part of his duties to try out the engine while it was in the garage, and he had a right to seat himself in the driver's seat while the engine was in motion. Having started the engine and seated himself in the driver's seat, he watched his opportunity, and, when another machine was passing out of the door, threw on the clutch, thus starting the machine, and swung in close behind the outgoing automobile and passed the watchman at the door, disregarding his commands to stop. The watchman was not called upon to jump in front of the machine and be run down, nor was it a part of prudence to arm himself with a club to stun the chauffeur, or with a pistol to kill him. If the watchman had let himself be run over, it would not have stopped the machine. Nor would the disabling of the chauffeur have had that effect. On the contrary, it would have turned the automobile loose in the street, without a driver, to the disaster of itself and everything in its path. Nor would a bar or chain or half-open door have helped the matter. The bar or chain must necessarily have been down to let out the automobile which was lawfully passing, and the door must have been open for the same purpose. The plaintiff's machine was following so closely behind the other automobile that the door could not have been closed or the bar or chain put up to prevent its passing out. Such an occurrence had not happened before in all defendant's experience, and it is impossible to conceive what further reasonable thing it could have done to prevent the machine from being taken out. In making its regulations, the defendant properly assumed that plaintiff's chauffeur was reasonably honest and faithful. The defendant did not insure that the plaintiff's own servant would not by trick or theft take the plaintiff's machine from the garage in the nighttime without a written order. All that it was bound under its contract to do was to use reasonable care to prevent it. In order to fasten liability upon the defendant, lack of such reasonable care must be proven. If ordinary care was wanting, it ought to be easy to suggest what further could have been done. I have heard no such suggestion, nor do I perceive how a reasonable one could be made. I, therefore, conclude that there was no evidence justifying the verdict of the jury that the defendant failed in ordinary care or was guilty of such ordinary negligence as would make it liable to the plaintiff.

I therefore vote to reverse the judgment.

LAUGHLIN, J., concurs.