(59 App. Div. 192.)

## L'HOMMEDIEU et al. v. WINTHROP.

(Supreme Court, Appellate Division, Second Department. March 15, 1901.)

1. BUILDING CONTRACTS—SPECIFICATION SIGNED—BASIS OF ESTIMATE.

Where specifications signed as part of a building contract provided that the finishing coat for certain stucco work should be made of freshly burned shell lime and thoroughly washed coarse white marble dust, the contractors were bound to the performance of the work in accordance with such provision, notwithstanding that the plans and specifications submitted to them, and on which they made their estimate, called for a plain cement exterior coat, without the white finish.

2. SAME—BREACH—TRANSACTIONS WITH SUBCONTRACTORS—INSTRUCTION AS TO WORK.

Under the provisions of a building contract, that all transactions with the subcontractors should be made through the general contractor, excepting explanations and instructions relating to their work which might be direct, correspondence between the architects and subcontractors as to the composition of stucco work, and the submission and approval of samples thereof, were within the exception, and constituted no breach of the contract on the part of the landowner, whose agents the architects were.

3. SAME—TRIAL—SUBMISSION OF EVIDENCE—CONSTRUCTION—PERMISSION TO CHANGE MATERIALS.

Different material was used by a subcontractor in making samples of exterior coating for parts of a building than the specifications called for, and these samples were approved by the architects. Later the architects wrote the subcontractor in contemplation of introducing such different material, but their last letter said to leave it out, and follow the specifications. Held, that this evidence should not go to the jury on the question whether the architects authorized the change in material, where the contract provided that no change should be made in any of the materials called for in the specifications, unless by written permission of the architects.

4. SAME—PARTIES BOUND BY ARCHITECT'S DECISION.

Where a contract provided that no change should be made in any of the materials called for in the specifications, unless by written permission of the architects, and further stated that the decision of the architects as to the character of any material furnished should be final as to both owner-

and contractor, the latter provision related not to the kind, but only to the character, of the material, and did not authorize the architects to change the kind of material except by instrument in writing.

**5. SAME—INSTRUCTIONS.**

Where a contract sued on provided that no change should be made in any of the materials called for in the specifications, unless by permission in writing from the architects, it was error to instruct that the architects had power to authorize a change in such materials by verbal assent or by implication.

Hirschberg, J., dissenting.

Appeal from trial term, Nassau county.

Action by George A. L'Hommedieu and another against Robert Dudley Winthrop. From a judgment in favor of plaintiffs, defendant appeals. Reversed, on condition.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Henry W. Taft, for appellant.
Clinton B. Smith, for respondents.

GOODRICH, P. J. The plaintiffs sue for a balance of $12,222.48, alleged to be due them on a written contract dated July 27, 1897, for the erection by them of a dwelling house for the defendant at Westbury, Long Island. It is conceded in the defendant's brief that the contract was duly performed in all respects "except as to the exterior stucco coat and the columns and ornamental work." The contract contained the following provisions, which I consider material to my expression of opinion:

"(1) The contractor shall and will well and sufficiently perform and finish, in a thoroughly workmanlike manner, under the direction and to the satisfaction of McKim, Mead & White, architects, acting for the purposes of this contract as agents of the said owner, all carpenter, mason, plastering, heating, plumbing, electric, and other works in the erection of dwelling house at Westbury, New York, agreeably to the drawings and specifications made by the said architects, which drawings and specifications are identified by the signature of the contractor, and acknowledged to be a part of this contract, and to the dimensions and explanations thereon, therein, and herein contained, according to the true intent and meaning of said drawings and specifications and of this contract, including all labor, materials, scaffolding, implements, and cartage necessary for the proper fulfillment of this contract. * * * (3) Should it appear that the work hereby intended to be done, or any of the matters relative thereto, are not sufficiently detailed or explained on the said drawings or in the said specifications, the contractor shall apply to the architects for such further drawings or explanations as may be necessary, and shall conform to the same as part of this contract, so far as may be consistent with the original drawings; and, in the event of any doubt or question arising respecting the true meaning of the drawings or specifications, reference shall be made to the architects, whose decision thereon, being just and impartial, shall be final and conclusive. * * * (5) Should the contractor at any time * * * fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due, or hereafter to become due, to the contractor under this contract."

The specifications contained additional provisions, as follows:

"No change will be made in any of the materials called for in the specifications, unless permission in writing is given by the architects." "The decision

of the architects as to the character of any material or labor furnished by the contractor will be final on both owner and contractor. * *· * Work done by any subcontractor, not approved by the architects, will not be accepted." "The contractors will be required to follow the plans strictly, and to execute all work in accordance therewith, and with the kind and quality of materials set forth in the following specifications." "For each and all payments on account of the work, the architects will issue their certificates, as will be agreed upon in the contract, but no certificate will be given upon work that is not in strict accordance with the plans and specifications, nor until defective work has been removed and replaced to the satisfaction of the architects."

The stucco work is specified in these words:

"Workmanship. All of the stucco which is applied to the brick work will have the joints left open for a key, and after the brick mortar has set the surfaces will be cleaned with lime water and brushes thoroughly soaked, and while still wet will have a coat of one part Meier's cement to three parts sharp, coarse, washed sand, three-eighths to five-eighths of an inch thick, to be kept wet by spraying with a hose to prevent too rapid setting. This coat to be kept three-sixteenths of an inch back of the finished surface. After this coat has set, it will be wet, and the finishing coat made of freshly burned shell lime, and thoroughly washed coarse white marble dust will be put on, and finished with a wood float to the surface required, and when partially dry will be lightly sprayed with clean water to prevent too rapid setting. The greatest care will be taken to have absolutely clean sand and marble dust, and the very best materials, and constant watchfulness to prevent too rapid setting. Sample of plain stucco covering to be made at the building by this contractor and approved by the architects before the balance of the work is proceeded with. * * * Patch up all joints in stucco work neatly with Meier's cement, and after all molded work is run, and all ornamental work set in place, clean off the entire stucco work of outside of building, and have the same in perfect condition."

The chief point of controversy between the parties is that the defendant claims that the outside finish—that is, the white exterior coating upon the cement basis—should have been composed of "freshly burned shell lime and thoroughly washed coarse white marble dust," so that it might be as white as the Tuckahoe marble sills used in the construction, but that the plaintiffs did not use the materials specified for the exterior coating, or do the work properly, and that the result obtained was so bad, as to permanence and color, that, after requiring the plaintiffs to perform that part of the contract, he gave them notice of his intention to have the work done over, and did so, at an expense of $10,934.33, which he claims should be deducted from the unpaid balance of the contract, leaving due $1,828.15, for which he offered judgment. At the close of the plaintiffs' evidence, and at the close of all the evidence, the defendant moved for the direction of a verdict for the smaller sum, and no more, on the ground that the plaintiffs had not proved compliance with the contract according to the specifications, and also that they had not produced the certificate of the architects. This motion being denied, the defendant excepted. The jury rendered a verdict for the larger amount, and the defendant appeals.

After the making of the contract, and in June, 1897, the plaintiffs entered into a subcontract with Whitman & Co., of Philadelphia, to perform the exterior stucco work. The plaintiffs contend that, before they signed the contract, plans and specifications were submitted to them in order that they might make an estimate; that these called

for a "plain cement exterior stucco, without the white finish"; that they submitted their plans to, and received an estimate from, the firm of Whitman & Co. for doing the work under such specifications, and made a contract with it for the stucco work; that the plaintiffs sent their estimate for doing the entire work of the contract on that basis; and that they had no knowledge of a change from a "plain Portland cement job to a Portland cement ground with a shell-lime and marble-dust finish." At the trial, however, Mr. L'Hommedieu was asked:

"Q. In the specifications upon which you made your estimate, was that clause written there in close print included in those specifications, either expressly or in substance? A. No, sir. (Mr. Weller [defendant's counsel] objects, and moves to strike the answer out as incompetent, irrelevant, and immaterial, as, no matter what the contract had been before, it was merged in the specifications referred to.) By the Court: Q. Do you repudiate the specifications as they now appear, that you signed? A. No."

Upon this evidence, we must assume that the plaintiffs knowingly executed the contract with the specifications thereto annexed, and consequently they were bound to the performance of the work in accordance therewith.

The plaintiffs contend that the defendant's architects had interviews and correspondence with Whitman & Co. as to the composition of the stucco work, and that the latter submitted samples of the materials and composition, which were approved by the architects, and afterwards used in the work, and that they had no knowledge of these communications and transactions. They rely upon a provision of the specifications which reads: "All transactions with the subcontractors to be made through the general contractor, excepting explanations and instructions relating to their work, which may be direct." But the communications referred to clearly related to the "explanations and instructions relating to their work, which may be direct."

There was evidence tending to show that, although the specifications did not call for the use of cement in the exterior coat, yet cement was used in the samples prepared for and exhibited by Whitman & Co. to the architects, and that the latter approved such sample. The language of a letter written by them to Whitman & Co., on July 28, 1898, uses the expression, "the sample you submitted, and which we approved." There was also a letter written by the architects to Whitman & Co., on March 29th, in which the former said:

"We especially call your attention to the part of the specification which calls for the finish to be made of cement and marble dust. The finish of all cement work must be as white as the marble of the rest of the house (sills, etc.); this is Tuckahoe marble. We will decide in reference to the cement to be used when we see your finished samples."

On the other hand, is a letter from the architects to Whitman & Co., dated April 26, 1898, saying:

"We have been given to understand that Keene's cement will not stand weather, and therefore wish that none be put in, and that the specifications be followed."

Similar reference to the specification was made in a previous letter, dated September 22, 1897. After the exterior coat had been ap-

plied, some of the work was flaked off by a heavy storm, and attempts were unsuccessfully made by Whitman & Co. to remedy the defects.

The evidence thus stated, and other evidence, required the submission to the jury of the question whether or not the architects, acting as the agents of the defendant and within the power conferred upon them by the defendant's contract, had authorized the use of cement, unless, as matter of law, the architects had no authority to vary the terms of the specifications as to the materials to be used. It will be observed in this connection that the specifications forbid any change of "materials called for in the specifications, unless permission in writing is given by the architects." It is true that the architects had power to consent in writing to a change of materials, but I find nowhere any evidence of such permission in writing. On the contrary, after various samples with different cements had been submitted for their inspection, they wrote Whitman & Co., on April 26, 1898, before the commencement of the work in June, 1898: "We have been given to understand that Keene's cement will not stand the weather, and therefore wish that no more be put in, and that the specifications be followed." This was written before the work on the exterior finish was commenced, and was clear notice that no "permission in writing" was given to make any change in materials named in the specifications for the finishing coat; that is, "freshly burned shell lime and thoroughly washed coarse white marble dust." It is true that there are some expressions in the letters of the architects which refer to the use of cement in connection with marble dust, but these are all prior to the letter of April 26th, above referred to.

We are thus brought to the question whether the architects had any power or authority, otherwise than by permission in writing, to vary the provision of the specifications as to the constituents of the finishing coat of stucco. The specifications provided that the finishing coat should be made of "freshly burned shell lime and thoroughly washed coarse white marble dust." I am of opinion that the architects had no power to make any change therein except by permission in writing. The provision of the specifications, that the decision of the architects as to the character of any material or labor furnished by the contractors "will be final on the owner and contractors," did not authorize any change of material, but only related to the character of the material mentioned in the specifications.

In Lewis v. Yagel, 77 Hun, 337, 28 N. Y. Supp. 833, a similar question was under advisement. The contract provided that certain work should be of a specified quality, subject to the acceptance or rejection of an architect, all to be done in strict accordance with the plans and specifications, and the court held that (page 347, 77 Hun, and page 840, 28 N. Y. Supp.):

"The acceptance by the architect of a different class of work, or of an inferior material, will not bind the owner, and does not relieve the contractor from the agreement to perform according to the plans and specifications; the provisions for the acceptance being but an additional safeguard against defects not discernible by an unskillful person."

In Glacius v. Black, 50 N. Y. 145, the claim was made that, by the terms of a contract, the architect had the power to bind both parties

by his acceptance of work and materials, and the court said (page 150):

"The contract confers no power upon the architect to change or alter the plans and specifications; nor is there any provision, found in many such contracts, that the decision of the architect shall be final and conclusive."

In the present case we have a clause making the decision of the architects as to the character of material and labor final on both parties. No certificate having been given by the architects, the plaintiffs were not in a position to recover unless the refusal of the architects was unreasonable. Smith v. Brady, 17 N. Y. 173; Nolan v. Whitney, 88 N. Y. 648. In the latter case it was held that, where a contract required the production of the architect's certificate, the builder might recover if the refusal to give such certificate was unreasonable, and that this required the question of substantial performance to be submitted to the jury. See, also, to the same effect, Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271. The court charged in accordance with this rule.

In Fitzgerald v. Moran, 141 N. Y. 419, 36 N. E. 508, the plaintiff made a subcontract with King, a principal contractor, to do certain plastering according to the written specifications of a building contract, which required the use of King's Windsor cement, and that the work should be done under the direction of a superintendent of King. The plaintiff claimed that he was directed by the architect to follow the directions of the superintendent, and did so follow them, in mixing plaster in manner varying from the specifications. The court held that the superintendent had no right to change the proportions of the mixture, and that the plaintiff had failed to fulfill his contract.

The court, in the case at bar, charged as follows:

"If you should find that it was the duty of the subcontractor to follow those specifications precisely, and that he failed to do it, then the defendant would be entitled to a deduction. The plaintiffs claim that the architects who had charge of this work were cognizant of the use, and either directed, or, at least, assented to, the use, in addition to these two constituents, of a certain quantity of cement, and knew that what finally entered into the finishing coat was a certain quantity of cement, of freshly burned shell lime, and of marble dust. And there have been submitted to you a large amount of correspondence, and also the testimony of various witnesses, from which you are asked to infer and to find that these architects expressly assented to the use of this cement and this mixture, and approved of it after it was on the building. If you find that to be the case,—if the subcontractor put up this finish for the stucco work with the approval of the architects,—of course he did not guaranty the result; and if he followed their directions and instructions, and performed his work in accordance with them, he is entitled to compensation."

This was not specifically excepted to, but there were exceptions to the charge of certain of plaintiffs' requests, as follows:

"(3) That if the architects approved of material and workmanship, or either, upon a sample of the same presented by their request, that is the approval contemplated by the contract in this case." "(5) That, if the materials for this work were changed by direction of the architects before the work was executed, they cannot, after the work has been executed, disapprove it on the ground of such change of materials."

I think these instructions were erroneous for the reason already stated, that the architects had no authority to approve of any change

in the materials named in the specifications except by written permission; and, no such permission being in evidence, the jury were practically instructed that they could infer permission by the acts of the architects in the examination and approval of the samples.

"(9) That if the architects and Whitman & Co. construed the specifications in practice to mean that cement should be used in the white work, and cement was introduced into the composition of the white exterior work without the knowledge or consent of the contractors, the plaintiffs, then the plaintiffs are relieved from any liability for the result, whether or not it was practicable. to execute the white work with freshly burned shell lime and marble dust as specified. (10) If the jury find that the architects approved a sample for the stucco work, and that said work was done in conformity with the sample, the plaintiffs are not responsible if the materials of which such sample was composed were not durable." "I charge that in approving the sample they not only approved of its appearance, but approved of the ingredients of which it was composed. (11) If the architects, without notification to plaintiffs, changed the specifications relating to the stucco work after the making of the contract between plaintiffs and defendant, the plaintiffs are not responsible for the effects of such change;" "not unless they had notice and assented to it."

The effect of the quoted portions of the charge and refusals was to hold that the architects had power, otherwise than by permission in writing, to make a change in the materials named in the contract and specifications and the method of applying them. It is true that the contract provided that the work should be done under the direction and to the satisfaction of the architects, who were to act, for the purposes of the contract, as agents of the owners. But this referred to the sufficiency and character of the materials to be used, and did not confer power upon the architects to make a change in the materials named in the specifications for the exterior finish, except by permission in writing. The materials to be used in that work, and the manner of their application, were distinctly and minutely defined in the specifications. The use of any other materials could be authorized only by the architects' permission in writing. It was legal error to permit the jury to say that the architects had verbally assented to a change of the constituents of the stucco work finishing, whether this was done by approving of the sample furnished by Whitman & Co. or in any other manner.

The use of cement in the finishing coat seems to have been a substantial variation from the specifications. At any rate, the defendant had the right to insist on the performance of the contract. When the work of the plaintiffs was taken down, a new finishing coat was put on by another party, of the materials named in, and in accordance with, the specifications, and proved successful. The cost of this work the defendant was entitled to offset against the unpaid balance due on the contract, and the judgment should be reversed, unless the plaintiffs elect to reduce the recovery to that extent. All concur, except HIRSCHBERG, J., who dissents.